CENTER FOR DISABILITY ACCESS
Raymond G. Ballister, Jr. SBN 111282
Mark Potter, Esq., SBN 166317
Phyl Grace, Esq. SBN 171771
Mail: PO Box 262490
　　San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
　　San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
Phylg @ potterhandy.com
　　Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **William Lawrence Turner**, <br><br> Plaintiff, <br><br> v. <br><br> **Veerinder S. Anand;** <br> **Sandhya Anand;** <br> **Veerinder S. Anand, M.D., Inc.,** a California Corporation, <br><br> Defendants. | **Case:** 14-cv-1147-BAS-PCL <br><br> **Plaintiff's Opposition to the Defendants' Motion to Dismiss** <br><br> Date:　November 17, 2014 <br> Time:　N/A <br> Ctrm:　4B <br><br> Hon. Judge Cynthia A. Bashant |

**TABLE OF CONTENTS**

TABLE OF CONTENTS............................................................................i

TABLE OF AUTHORITIES......................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES ...............................1

   I.    SUMMARY OF ARGUMENT ...........................................................1

   II.   RELEVANT FACTS.............................................................................2

   III.  THE DEFENDANTS' JURISDICTIONAL CHALLENGE IS INAPPROPRIATE AS A 12(B)(1) MOTION................................2

   IV.  THE PARKING IS NOT COMPLIANT ...........................................3

   V.   THE DEFENSE HAS NOT MET THE "FORMIDABLE" BURDEN OF ESTABLISHING MOOTNESS............................5

     A. The Defense Has Not Established that the Violation Will Not Recur ......................................................................................5

     B. The Defense Has Not Even Addressed the Voluntary Cessation Standard........................................................................ 11

   VI.  CONCLUSION................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Careau Grp. v. United Farm Workers of Am., AFL-CIO*,
    940 F.2d 1291 (9th Cir. 1991) .................................................................... 3

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
    631 F.3d 939 (9th Cir. 2011) ...................................................................... 4

*City of Mesquite v. Aladdin's Castle, Inc.*,
    455 U.S. 283 (1982) ..................................................................................... 5

*Feldman v. Pro Football, Inc.*,
    419 F. App'x 381 (4th Cir. 2011) ....................................................... 9, 10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ........................................................................ 1, 5, 10

*Gaylor v. Greenbriar of Dahlonega Shopping Ctr., Inc.*,
    975 F. Supp. 2d 1374 (N.D. Ga. 2013) ..................................................... 8

*Grove v. De La Cruz*,
    407 F. Supp. 2d 1126 (C.D. Cal. 2005) .................................................... 9

*Iron Arrow Honor Soc'y v. Heckler*,
    464 U.S. 67 (1983) ....................................................................................... 9

*Jenkins v. United States Gas Corporation*,
    400 F.2d 28 (5th Cir. 1998) ........................................................................ 8

*Modern Dev. Co. v. Navigators Ins. Co.*,
    111 Cal. App. 4th 932 (2003) ................................................................... 8

*Moeller v. Taco Bell Corp.*,
    816 F. Supp. 2d 831 (N.D. Cal. 2011) ........................................ 7, 10, 11

*Molski v. M.J. Cable, Inc.*,
    481 F.3d 724 (9th Cir. 2007) .................................................................... 4

*Nat'l Adver. Co. v. City of Miami*,
    402 F.3d 1329 (11th Cir.2005) ................................................................. 9

*Roberts v. Corrothers*,
   812 F.2d 1173 (9th Cir. 1987) ............................................................ 1, 3
*Rosales v. United States*,
   824 F.2d 799 (9th Cir. 1987) ................................................................. 3
*Santiago v. Miles*,
   774 F.Supp. 775 (W.D.N.Y. 1991) ........................................................ 8
*Sharp v. Rosa Mexicano, D.C., LLC*,
   496 F. Supp. 2d 93 (D.D.C. 2007) ......................................................... 6
*Sheely v. MRI Radiology Network, P.A.*,
   505 F.3d 1173 (11th Cir. 2007) ............................................................. 9
*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) .................................................................................. 9
*Sun Valley Gasoline, Inc. v. Ernst Enterprises, Inc.*,
   711 F.2d 138 (9th Cir. 1983) ................................................................. 3
*Tandy v. City of Wichita*,
   380 F.3d 1277 (10th Cir. 2004) ............................................................. 6
*United States v. Concentrated Phosphate Export Ass'n*,
   393 U.S. 199 (1968) ............................................................................... 5
*United States v. W.T. Grant*,
   345 U.S. 629 (1953) ............................................................................... 8

1  **MEMORANDUM OF POINTS AND AUTHORITIES**

3  **I. SUMMARY OF ARGUMENT**

Plaintiff, a paraplegic, has sued the defendants because their business failed to provide compliant accessible parking. The defendants have now installed a new accessible parking space and declared the federal claim moot. The defense motion should be denied for three reasons.

First, a court should not resolve disputed facts where the question of jurisdiction is dependent on the resolution of factual issues going to the merits. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Here, the complaint's claim is *lack of accessible parking*. The defense motion challenging jurisdiction ask whether there is a *lack of accessible parking*. In such cases, the Rule 56 "summary judgment standard" applies and this current motion is premature until the plaintiff has had the opportunity to conduct sufficient discovery. *Roberts*, 812 F.2d at 1177.

Second, based on the discovery completed to date, the newly installed parking is not in compliance and, in fact, there are a number of additional problems at the facility for which the plaintiff will be filing a motion to amend.

Third, a case only becomes moot, "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). In the present case, the violation is of the type that constantly recurs (improper maintenance of parking), the defendants have a history of violating the ADA parking requirements, and the defense has provided no evidence to support the "voluntary cessation" claim that would permit the Court to make a mootness finding at this time.

## II. RELEVANT FACTS

Plaintiff Turner is a paraplegic who cannot walk and who uses a wheelchair for mobility. Complaint ¶ 1. He alleges that when he went to the defendants' doctor's office located at 1318 S. Imperial Ave., El Centro, California, the sole "handicap" parking space did not comply with the law. Complaint ¶ 2, 11-14. Plaintiff's expert, Paul Bishop, explains how the original parking space that was marked and reserved for persons with disabilities failed to comply with the law. Exhibit 3 (Bishop Dec), ¶ 8-11. Subsequently, the defendants installed a new accessible parking space on the eastern side of the parking lot, along Imperial Ave. *Id.* at ¶ 13. This newly installed accessible parking space has a slope running from the walkway into the access aisle that measures 4%. Exhibit 3 (Bishop Dec), ¶ 14; Exhibit 4 (Photos), Photo C. Plaintiff's expert opines that the newly installed accessible parking space fails to comply with the law because of this slope. Exhibit 3 (Bishop Dec), ¶ 23.

## III. THE DEFENDANTS' JURISDICTIONAL CHALLENGE IS INAPPROPRIATE AS A 12(B)(1) MOTION

The defense motion to dismiss for lack of jurisdiction is based entirely on the claim that the defendants' parking lot now complies with the ADA and, therefore, there is nothing for the court to enjoin under the federal statute. While it is appropriate in certain circumstances to bring a motion under Federal Rule of Civil Procedure 12(b)(1) introducing extrinsic facts and challenging federal court jurisdiction, it is not appropriate in the present case with the present motion.

The problem with the defendants' motion is that the very question this Court needs to address in determining whether it has jurisdiction is the same question that must be answered to determine the merits of the case

and whether plaintiff can prove his claims. Plaintiff alleges that the defendants' parking does not comply with state and federal accessibility laws. If that is true, the plaintiff wins and can obtain the injunction. If that is wrong, the plaintiff loses. That is the case. The ultimate question in this case is whether the defendants' parking lot complies with accessibility laws. The defendant, however, asks this Court to answer that very question in determining whether it has jurisdiction. This is improper.

A court should not resolve disputed facts where the question of jurisdiction is dependent on the resolution of factual issues going to the merits. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987) ("A district court may hear evidence and make findings of fact necessary to rule on the subject matter jurisdiction question prior to trial, *if the jurisdictional facts are not intertwined with the merits*.") In such cases, the Rule 56 "summary judgment standard" applies. *Roberts*, 812 F.2d at 1177; *Careau Grp. v. United Farm Workers of Am., AFL-CIO*, 940 F.2d 1291, 1293 (9th Cir. 1991). The question of jurisdiction and the merits of an action are considered intertwined where the same statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief. *Sun Valley Gasoline, Inc. v. Ernst Enterprises, Inc.*, 711 F.2d 138, 139 (9th Cir. 1983). The defense can and should bring its claims in the form of a Rule 56 motion.

### IV. THE PARKING IS NOT COMPLIANT

Under the 1991 Standards, parking spaces and access aisles must be level with surface slopes not exceeding 1:50 (2%) in all directions. 1991 Standards § 4.6.2. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not

3

permitted. 2010 Standards § 502.4. "Access aisle are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. Specifically, built up curb ramps are not permitted to project into access aisles and parking spaces. *Id.* No more than a 1:48 slope is permitted. 2010 Standards § 502.4.

Here, the newly installed parking space failed to meet either standard because of the existence of slopes in excess of 2.2% in the access aisle. Exhibit 3 (Bishop Dec), ¶ 14 & 23; Exhibit 4 (Photos), Photo C. This is not just a minor or technical deviation. "The issues involved in ADA accessibility cases are, to be frank, mind-numbingly boring; the ADA Accessibility Guidelines regulate design elements down to the minutest detail. But, although the ADA's requirements are highly technical, they are essential to serve a core function of all civil rights laws: ensuring that the arenas of civic life are open to everyone." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 732, fn. 5 (9th Cir. 2007) (internal quotation marks omitted for readability). "Any element in facility that does not meet or exceed the requirements set forth in the ADAAG is a barrier to access." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011). These are "objective" and "precise" standards and "the difference between compliance and noncompliance" is "often a matter of inches." *Id*.

The defense argues that the plaintiff has testified that the parking lot is now fixed and that his complaints have been resolved. Defense Brief (ECF Entry 15-1), p. 1, lines 11-12. This is not true. The plaintiff is represented by counsel and any claims about what the plaintiff is seeking or whether compliance has been reached will be done by the plaintiff with the advice and counsel of his attorneys who are trained in the law. The plaintiff stated at his deposition that he has only driven by the parking lot

4

Opposition to Motion to Dismiss          Case: 14-cv-1147-BAS-PCL

and not attempted to park in it and from his vantage point the new parking looked very good. See Defense Depo Exhibit (ECF Entry 15-3), p. 72, lines 15-23. This is not a judicial admission that the parking lot is in fully compliance with the ADA. In fact, as the plaintiff's expert notes: the slope in the access aisle "is not obvious until one makes a close inspection." Exhibit 3 (Bishop Dec), ¶ 14.

## V. THE DEFENSE HAS NOT MET THE "FORMIDABLE" BURDEN OF ESTABLISHING MOOTNESS

In order to establish that the federal claim has been rendered moot, the defense must establish two things: (1) that the violation has been fixed; and (2) that the violation cannot be reasonably expected to recur. The defense has not established either of these prongs.

### A. The Defense Has Not Established that the Violation Will Not Recur

"The test for mootness...is a stringent one. Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant free to return to his old ways." *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203-04 (1968) (citation and internal punctuation omitted). Moreover, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). A claimed remedy "might become moot if subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth,* 528 U.S. at 167. The party asserting mootness has "the heavy burden of persuading the Court that the challenged conduct cannot be reasonably expected to recur." *Id*.

One court, presiding over an ADA case, summarized the standard as follows:

> The burden of establishing mootness by voluntary compliance is a heavy one. A request for prospective relief can be mooted by a defendant's voluntary compliance if the defendant meets the "formidable burden" of demonstrating that it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Such a burden will typically be met only by changes that are permanent in nature and that foreclose a reasonable chance of recurrence of the challenged conduct.

*Tandy v. City of Wichita*, 380 F.3d 1277, 1291 (10th Cir. 2004) (internal cites and quotes omitted for readability).

In this case, the plaintiff alleged in his complaint that, "Additionally, defendants have no policy or procedure in place to maintain the parking space that is reserved for disabled persons. The parking space is faded, the ISA logo has faded, the "No Parking" warning has faded, and the blue striping now looks white." Complaint ¶ 13. The defense never addresses that claim. Thus, merely because a handicap parking space has been freshly painted in again, does not mean that it will also be permitted to fade away or be painted over once the smoke clears from this case. Parking painting is not permanent and always in flux.

There are a number of ADA violations that are structural in nature and their removal means that the violation cannot reasonably recur. For example, if the barrier is an unramped step and the defendant physically removes the step and replaces it with a permanent ramp, there is no reasonable likelihood that the violation will be repeated. When the removal of the barrier involves a "structural modification," it is unlikely that the barrier will show up again in the future. *Sharp v. Rosa Mexicano, D.C., LLC*, 496 F. Supp. 2d 93, 99 (D.D.C. 2007) (where the defendant installed a handicap accessible sink and the court noted that the lack of an

Opposition to Motion to Dismiss    Case: 14-cv-1147-BAS-PCL

1  accessible sink could not be reasonably expected to recur in the future as
2  the fix involved "structural modification" that was, "in short, a *fixture*" and
3  somewhat permanent) (emphasis in original).

4  We do not have a similar situation in the present case with the
5  parking. Parking lot striping is not structural and not permanent. Parking
6  lot striping is a violation that continually resurfaces at a particular site.
7  Parking lot striping, especially at asphalt parking lots such as in this case,
8  needs to be redone every few years. Exhibit 3 (Bishop Dec), ¶ 26. As expert
9  Paul Bishop explains, "Properly maintaining an asphalt parking lot
10 requires constant filling of cracks, constant sealing (every 2-3 years) and
11 constant repainting of the parking lot striping." *Id.* at ¶ 27. Mr. Bishop, who
12 is a Certified Access Specialist and has been an ADA expert in hundreds of
13 cases (*id.* at ¶ 4), informs us that the most common issue he sees is parking
14 lot issues (*id.* at ¶ 5) and that "it is very easy and very common for
15 businesses to let parking lot striping fade to the point of being non-
16 functioning or to be improperly repainted to lose an access aisle or to
17 become narrower than permitted by the access standards." *Id.* at ¶ 32. Mr.
18 Bishop submits as exhibit 5, 14 pages with 21 photographs depicting 21
19 different sites at which he has been an expert consultant where one can see
20 the faded, disappearing parking lot striping.

21 It is important to note that each time the parking lot is restriped, it
22 constitutes an "alteration" under both the California Building Code and
23 the federal accessibility standards and, therefore, the striping must strictly
24 comply with the most current code. In *Moeller v. Taco Bell Corp.*, 816 F.
25 Supp. 2d 831, 853 (N.D. Cal. 2011), the defense argued otherwise,
26 claiming that parking lot restriping is "painting" which is simply cosmetic
27 and exempted from the alteration requirement of the CBC. The *Moeller*
28 court rejected the claim and held that, "parking striping is an 'item

7

1  regulated by' Title 24, and thus cannot be considered merely cosmetic."
2  *Id.* Likewise, in *Gaylor v. Greenbriar of Dahlonega Shopping Ctr., Inc.*, 975 F.
3  Supp. 2d 1374, 1392-93 (N.D. Ga. 2013), the court held that the
4  restriping of a parking lot constituted a new alteration on that date, subject
5  to the new construction/alteration standards.

Thus, every time a defendant repaints its faded parking lot, it is subject to the current codes and has a renewed obligation to comply with the access standards. Thus, in this case, every time the defendants resurfaced and repainted their lot (after 1991), they failed to comply with the ADA. Here, the defense intended the parking lot to be striped the way it was because it had the power to change it but did not. In *Modern Dev. Co. v. Navigators Ins. Co.*, 111 Cal. App. 4th 932, 941 (2003), the court noted that the physical conditions of a business, including its "architectural barriers" are "the result of day-to-day managerial decisions, actions or omissions to act" and that whether or not there is a violation, "As a matter of law, the architectural layout of a building is not an accident" and that by failing to change the conditions, defendant is fairly said to have "intended the architectural layout of the [business] to be the way it was when [a plaintiff] visited" the business.

In this case, the defendant only added back a properly compliant handicap parking space *after* being sued. Under such circumstances, courts have been advised to be skeptical. "It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is a probability of resumption." *Santiago v. Miles*, 774 F.Supp. 775, 793 (W.D.N.Y. 1991), *quoting, United States v. W.T. Grant,* 345 U.S. 629, 632 (1953) "[S]uch actions in the face of litigation are equivocal in purpose, motive, and permanence." *Jenkins*, 400 F.2d AT 33; *see also Sheely*

*v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1186 (11th Cir. 2007) (collecting cases); *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 109 (1998) ("presumption" of future injury when cessation occurs in response to suit); *Iron Arrow Honor Soc'y v. Heckler,* 464 U.S. 67, 71-72 (1983); *Nat'l Adver. Co. v. City of Miami,* 402 F.3d 1329, 1333 (11th Cir.2005) (per curiam) ("[V]oluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction.").

Merely fixing a problem after being sued does not render the claims moot. "The question is not whether the precise relief sought at the time the application for an injunction was filed is still available. The question is whether there can by any effective relief. Mere voluntary cessation of allegedly illegal conduct does not moot a case; it if did, the courts would be compelled to leave the defendant free to return to his old ways." *Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1130 (C.D. Cal. 2005) (internal cites and quotes omitted for readability). Here, if the Court finds that there was a parking lot violation and the violation was the result of a failure to maintain the lot properly, the Court can certainly order the defendant to maintain the parking lot in compliance with the ADA accessibility standards.

An example of a case where these standards were applied in an ADA setting is *Feldman v. Pro Football, Inc.*, 419 F. App'x 381 (4th Cir. 2011). In *Feldman*, the plaintiffs were three deaf persons who regularly attended Redskins games at FedEx Field. *Id.* at 383. They filed suit under the ADA because the defendants failed to provide auxiliary access to the content of the broadcasts from FedEx Field's public address system. *Id.* Soon after plaintiffs filed their complaint, defendants captioned most of the aural content. *Id.* Among other steps taken, the defense captioned the field's

9

two light-emitting diode ribbon boards and most of the televisions in the concourse area and they hired a stenographer to provide the captioning. *Id.* at 385. The district court denied the defense motion for summary judgment and on the mootness claim, held: "Given the ease with which defendants could stop providing captioning, we simply cannot say that they have made an affirmative showing that the continuation of their alleged ADA violations is 'nearly impossible.'" *Id.* at 387.

In this case, because the parking lot striping will fade and will need to be repainted every few years, it is very easy for the defendants to return to their previous ways and not provide a compliant parking lot. The *Moeller* case is very much on point. *Moeller* involved a class action against Taco Bell for commonly seen ADA violations at their stores. One of those violations was improperly striped and maintained parking lots. The *Moeller* court rejected the defense argument that merely because the defendant had fixed the violations, the ADA claim was moot. The court found that, among other reasons, "the evidence showed that a number of architectural elements in Taco Bell restaurants are subject to frequent change . . . including parking striping . . . ." *Moeller*, 816 F.Supp.2d at 862.

It is uncontestable that failure to maintain parking lot striping is one of those frequently occurring, easily recurring violations and where a defendant has demonstrated a past apathy toward its legal obligations and a failure to comply with the law, a "voluntary" fix after being hauled into court does not meet the "formidable burden of demonstrating that it is absolutely clear the alleged wrongful behavior could not reasonably be expected to recur." *Id.* at 860, *quoting*, *Friends of the Earth, Inc.*, 528 U.S. at 190.

### B. The Defense Has Not Even Addressed the Voluntary Cessation Standard

The defense has made no attempt in its moving papers to support a voluntary cessation claim. The defense seems to be working under the assumption that simply painting the parking space irrevocably solves the problem, moots the issue and deprives this Court of jurisdiction and the ability to provide effective relief under the federal claim. But the problem is deeper than the temporary lack of a compliant handicap parking space. The problem is the failure of the defendant to maintain the parking lot in proper form. The defense puts forth no evidence explaining how this violation will not recur in the future.

The *Moeller* case provides an example of the type of deliberate consideration that goes into a voluntary cessation claim. In *Moeller*, the defense raised the voluntary cessation claim and identified the existence of written policies and an actual maintenance contract it had entered into to demonstrate that the violations would not recur in the future. The Court considered those things and found that the defendant had not met the formidable burden of proving mootness. The Court reasoned that polices could be "rescind[ed] at any time," that the defendant "had on multiple occasions not followed its policy that accessible parking spaces have required signage," that the defendant "could change these policies-by, for example, not renewing its year-to-year contract with [maintenance company]" and so on. *See Moeller*, 816 F. Supp. 2d at 860-62. In sharp contrast, the defense in this case has not identified any policy, has not identified a maintenance agreement, has not identified a plan of any sort, and has not even tried to support this defense. Even if the defense had submitted evidence of this sort, the plaintiff would be entitled to test and explore those claims in discovery.

**VI. CONCLUSION**

The plaintiff respectfully requests this Court deny the defense motion.

Dated: November 2, 2014         CENTER FOR DISABILITY ACCESS

/s/ Mark Potter
By:_____
Mark Potter, Esq.
Attorneys for Plaintiff