1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

WILLIAM LAWRENCE TURNER,

                      Plaintiff,

    v.

VEERINDER S. ANAND, ET AL.,

                    Defendants.

Case No.  14-cv-01147-BAS(PCL)

**ORDER:**

**(1)  GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION (ECF NO. 15);**

**(2)  GRANTING IN PART AND DENYING IN PART MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT (ECF NO. 20); AND**

**(3)  DENYING AS MOOT PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 24)**

      Plaintiff William Lawrence Turner ("Plaintiff") commenced this action against defendants Veerinder S. Anand, Sandhya Anand, Veerinder S. Anand, M.D., Inc. (collectively, "Defendants") on May 7, 2014 alleging violations of the

                14cv01147

1  Americans with Disabilities Act, the Unruh Civil Rights Act, and the California
2  Disabled Persons Act, and negligence.  Presently before the Court are Defendants'
3  motion to dismiss, Plaintiff's motion for leave to file a First Amended Complaint,
4  and Plaintiff's motion for partial summary judgment.

5      The Court finds these motions suitable for determination on the papers
6  submitted and without oral argument.  *See* Civ. L.R. 7.1(d)(1).  For the reasons set
7  forth below, the Court **GRANTS** Defendants' motion to dismiss, **GRANTS IN**
8  **PART** and **DENIES IN PART** Plaintiff's motion for leave to file a First Amended
9  Complaint, and **DENIES AS MOOT** Plaintiff's motion for partial summary
10  Judgment.

11 **I.     BACKGROUND**

12      Plaintiff is a paraplegic who cannot walk and uses a wheelchair for mobility.
13 (ECF No. 1 ("Compl.") at ¶ 1.)  Defendants own and operate a doctor's office in El
14 Centro, California.  (*Id*. at ¶¶ 2-3.)  In March 2013, Plaintiff was referred to
15 Defendants' office while seeking treatment for a hand injury. (ECF No. 15-3, Exh.
16 A at pp. 9–10, 11, 13:22-25.)  Plaintiff visited Defendants' office three additional
17 times over the next few months.  (*Id*. at 13:17-19.)  He alleges there was no ADA
18 compliant parking space at Defendants' office during any of these visits.  (Compl.
19 at ¶ 11.)  Plaintiff alleges the parking space designated as handicap accessible was
20 not ADA compliant because the parking space had faded paint, and lacked both a
21 compliant International Symbol of Accessibility ("ISA") sign and a blue border
22 around the adjacent access aisle.  (*Id*. at ¶¶ 12, 13, 22.)  Plaintiff further alleges
23 there was no "No Parking" warning in the access aisle (or that it had faded) and the
24 access aisle was not sufficiently wide.  (*Id*.)  Because of this "inaccessible parking,"
25 Plaintiff claims he was denied full and equal access to Defendants' office and
26 encountered difficulty.  (*Id.* at ¶ 14.)  Plaintiff alleges he would like to return to the
27 office. (*Id.* at ¶ 15.)

28      Plaintiff commenced this suit in May 2014.  The Complaint asserts four

causes of action: (1) violation of the Americans with Disabilities Act, (2) violation of the Unruh Civil Rights Act, (3) violation of the California Disabled Persons Act, and (4) negligence.  (*See* Compl.)  This case is before the Court via federal question jurisdiction under the Americans with Disabilities Act.  (*Id.* at ¶ 5.)  The remaining causes of action are California law claims brought before the court under supplemental jurisdiction.  (*Id.* at ¶ 6.)

Upon receiving the Complaint, Defendants undertook to correct Plaintiff's alleged issues.  (ECF No. 15-1 at 3:14-16.)  They moved the parking space designated for disabled persons closer to the front door of the clinic, added a wider access aisle, and had a Certified Access Specialist ("CASp") inspect the new space and issue an ISA sign.  (*See* ECF No. 15-1 at 1:8-10; ECF No. 17-1 at 2:8-10; ECF No. 17-2 at 2:17-19; ECF No. 15-7, Exh. E.)  Defendants alleged in their Answer "that the parking lot was modified in compliance with applicable disability laws."  (ECF No. 5 at 7:14-15.)

In August 2014, the parties held a conference pursuant to Federal Rule of Civil Procedure 26(f) and Magistrate Judge Lewis issued a Scheduling Order ("Order").  (*See* ECF No. 14.)  The Order, which conformed to Plaintiff's proposed scheduling order, set October 27, 2014 as the final date for amending pleadings. (ECF No. 21-4, Exh. N at 3:7; ECF No. 14 at ¶ 2.)  Defendants deposed Plaintiff on September 19, 2014, at which time Plaintiff made the following statements: that he had seen the new parking space (ECF No. 15-3, Exh. A at 16:15-23); that the problem with the parking space was "fixed" (*id.* at 18:1-3); that the noncompliant parking space was the only reason he had filed the suit (*id.* at 15:3-20); that he was referred to Dr. Anand (*id.* at 10:5); and that he had not had any further appointments with Defendants or any other doctors because there was nothing doctors could do to fix the problem with his hand (*id.* at 13:14-16).  Defendants filed this motion to dismiss on October 15, 2014.  (*See* ECF No. 15.)  Defendants move to dismiss for lack of subject matter jurisdiction, arguing the federal claim is moot, and also seek

1    dismissal of the pendant state law claims.  (*Id*. at 1:15-21.)

2          In mid-October 2014, presumably after receiving Defendants' motion to

3    dismiss, Plaintiff sent his own CASp to Defendants' property to inspect the new

4    parking space, as well as the rest of the facilities.  (ECF No. 20-2 at ¶ 17.)  Plaintiff

5    received the CASp report on approximately November 1, 2014, after the date to

6    amend pleadings set forth in the Scheduling Order.  (*See* ECF No. 16-3.)  Plaintiff

7    then filed his response to the motion to dismiss on November 3, 2014.  (*See* ECF

8    No. 16.)  In his response, he included the CASp report, which included evidence

9    that the slope in the new parking space exceeded the 2% maximum allowed under

10   the ADA, as well as evidence of several other violations not previously pleaded in

11   the Complaint.  (ECF No. 16-3 at ¶ 13-19.)  Upon receiving a copy of Plaintiff's

12   CASp report, Defendants contend they corrected the slope issue in the parking

13   space, put a plan in place to prevent future violations, and submitted evidence of

14   same along with their reply to the motion to dismiss on November 10, 2014.  (*See*

15   ECF Nos. 17, 17-1, 17-2, 17-6, 17-7.)

16         Immediately thereafter, on November 13, 2014, Plaintiff filed a motion for

17   leave to file a First Amended Complaint.  (*See* ECF No. 20.)  In the proposed First

18   Amended Complaint, Plaintiff references the slope issue in the new parking space,

19   but does not dispute that it has since been corrected.  (ECF No. 20-1 at ¶ 18.)

20   Rather, Plaintiff states that, in mid-October, the slope issue and other architectural

21   barriers were discovered, and that "[t]he defendants have claimed that this slope

22   issue has been corrected."  (*Id.* at ¶¶ 17, 18.)  Plaintiff also lists the additional

23   architectural barriers discovered in the mid-October inspection, but does not claim

24   to have personally encountered any of these.  (*Id.* at ¶¶ 19–22.)  Defendants filed

25   their response on December 1, 2014, (*see* ECF No. 21) and Plaintiff replied shortly

26   thereafter (*see* ECF No. 22).

27         In April 2015, Plaintiff filed a motion for partial summary judgment on

28   Plaintiff's state law causes of action before the Court under supplemental

1  jurisdiction.  (*See* ECF No. 24.)  Defendants filed an opposition.  (*See* ECF No. 27.)

2  **II.     LEGAL STANDARD**

3          **A.     Motion to Dismiss**

4          Under Rule 12 of the Federal Rules of Civil Procedure, a party may move to

5  dismiss a claim based on the court's lack of subject matter jurisdiction.  *See* Fed. R.

6  Civ. P. 12(b)(1).  "A federal court is presumed to lack jurisdiction in a particular

7  case unless the contrary affirmatively appears."  *Stock West, Inc. v. Confederated*

8  *Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted).  "Article III of the

9  Constitution confines the federal courts to adjudication of actual 'Cases' and

10 'Controversies.'"  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590 (1992).  "[T]he

11 core component of standing is an essential and unchanging part of the case-or-

12 controversy requirement of Article III."  *Id.* at 560 (citation omitted).

13 Consequently, a case that lacks Article III standing must be dismissed for lack of

14 subject matter jurisdiction.  *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th

15 Cir. 2011).  Because standing is essential for a federal court to have subject matter

16 jurisdiction, the issue of standing is properly raised in a 12(b)(1) motion to dismiss.

17 *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010)

18 (citations omitted).

19         The "irreducible constitutional minimum" of Article III standing is

20 comprised of three elements: (1) "the plaintiff must have suffered an 'injury in

21 fact'" which is both "concrete and particularized" and "'actual or imminent, not

22 'conjectural' or 'hypothetical'"; (2) "there must be a causal connection between the

23 injury and the conduct complained of" such that the injury is "'trace[able] to the

24 challenged action of the defendant, and not … th[e] result [of] the independent

25 action of some third party not before the court'"; and (3) "it must be 'likely,' as

26 opposed to merely 'speculative,' that the injury will be 'redressed by a favorable

27 decision.'"  *Lujan*, 504 U.S. at 560-61 (citations omitted). The party soliciting

28 federal jurisdiction has the burden of establishing these elements.  *Id.*  The doctrines

of ripeness and mootness also relate to a federal court's subject matter jurisdiction, and so challenges to a claim on either ground are properly raised in a 12(b)(1) motion. *Chandler*, 598 F.3d at 1122 (citations omitted).

A jurisdictional attack under can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the challenger asserts that the allegations in the complaint are insufficient to invoke federal jurisdiction, and the court is limited in its review to the allegations in the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual attack, the challenger provides evidence that an alleged fact in the complaint is false, thereby resulting in a lack of subject matter jurisdiction. *Id.* Therefore, under a factual attack, the allegations in the complaint are not presumed to be true and "the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003). However, "[a] court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citations omitted).

### B.    Motion for Leave to File First Amended Complaint

Generally, under Rule 15(a) of the Federal Rules of Civil Procedure, "a party may amend its pleading only with the opposing party's written consent or the court's leave" and leave shall be given freely when justice so requires. Fed. R. Civ. P. 15(a)(2). However, after a scheduling order has been issued setting a deadline to amend the pleadings, and a party moves to amend the pleadings after the deadline,

the motion amounts to one to amend the scheduling order and thus is properly brought under Rule 16(b) of the Federal Rules of Civil Procedure rather than Rule 15. *See Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 607-08 (9th Cir. 1992).

Under Rule 16, a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The decision to modify a scheduling order is within the broad discretion of the district court. *Johnson*, 975 F.2d at 607 (citation omitted). If good cause is shown, the court proceeds to consider the requirements of Rule 15(a). *Id*. at 608 (citing approvingly *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987), for its explication of this order of operations); *C.F. v. Capistrano Unified Sch. Dist*., 656 F. Supp. 2d 1190, 1192 (C.D. Cal. 2009).

## III.   DISCUSSION

### A.   Defendants' Motion to Dismiss

#### 1.   Americans with Disabilities Act

Plaintiff's lone federal claim is an alleged violated of Title III of the Americans with Disabilities Act ("ADA"). The ADA prohibits discrimination that interferes with disabled individuals' "full and equal enjoyment" of places of public accommodation. 42 U.S.C. § 12182(a). Unlawful discrimination under the ADA occurs when an accommodation "subjects an individual . . . to a denial of the opportunity . . . to participate in or benefit from the . . . accommodations of an entity." 42 U.S.C. § 12182(b)(1)(A)(i). A doctor's office is a place of public accommodation under the ADA. 42 U.S.C. § 12181(7)(F). The ADA Accessibility Guidelines ("ADAAG") provide "the objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations." *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 945 (9th Cir. 2011).

Pursuant to the ADAAG, parking spaces designated as reserved for disabled

individuals must be identified by the ISA sign.  ADAAG § 4.1.2(7)(a).  "At least one accessible route within the boundary of the site shall be provided from . . . accessible parking . . . to the accessible building entrance they serve."  ADAAG § 4.3.2(1).  Accessible parking spaces must be at least 96 inches wide and adjacent access aisles must be at least 60 inches wide.  ADAAG §§ 4.6.3, 4.6.6.  Additionally, "[p]arking spaces and access aisles shall be level with surface slopes not exceeding 1:50 (2%) in all directions."  ADAAG § 4.6.3.

The only available remedy to private plaintiffs under the ADA is injunctive relief.  42 U.S.C. § 12188(a)(1).  Because this is the sole remedy, a plaintiff pursuing injunctive relief must demonstrate, in addition to the traditional elements of standing, a "real and immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).  In the context of an ADA claim, a plaintiff can satisfy this requirement by "demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility."  *Chapman*, 631 F.3d at 944.  The Ninth Circuit has also held that if a plaintiff has established standing as to barriers that he did personally encounter, he may sue for injunctive relief as to barriers related to his disability that he did not personally encounter.  *Id*. at 951; *See also Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1047 (9th Cir. 2008) (citation omitted) ("An ADA plaintiff who has Article III standing as a result of at least one barrier at a place of public accommodation may, in one suit, permissibly challenge all barriers in that public accommodation that are related to his or her specific disability.").

### 2.   Factual Challenge To Subject Matter Jurisdiction

In the present case, Plaintiff alleges that he went to Defendants' office and that there was no compliant handicap parking in the lot serving the office.  (ECF No. 1 at ¶¶ 8, 11.)  He further alleges that he personally encountered this barrier and that the inaccessible parking denied him full and equal access.  (*Id*. at ¶ 14.)  He also alleges that he "would like to return and patronize the [Defendants'] Office but

1    he will be denied full and equal access" should he return.  (*Id*. at ¶ 15.)

2        Defendants bring a factual challenge to the Court's subject matter

3    jurisdiction.  In their motion to dismiss, they assert that the issues with the non-

4    compliant parking space and access aisle have been remedied, thereby rendering

5    Plaintiff's ADA claim moot.  (ECF No. 15 at 1:14-16.)  Defendants also assert that

6    if this Court finds that Plaintiff's ADA claim is moot, that it does not have

7    discretion to exercise jurisdiction over the pendant state law claims.  (*Id*. at 1:19-

8    23.)  In support of their motion, Defendants submit several documents, including,

9    but not limited to, the following: Plaintiff's deposition testimony (ECF No. 15-3); a

10   photograph of the new parking space (ECF No. 15-4); an ISA issued by a CASp

11   dated September 26, 2014 (ECF No. 15-7); a signed declaration stating that the

12   slope issue in the new parking space has been corrected (ECF No. 17-1); and

13   several photographs of the new parking space with a level displaying a slope of less

14   than 2% (ECF No. 17-7).

15       Plaintiff argues that the mere fact that Defendants have remedied the parking

16   space does not render his claim moot.  (ECF No. 16 at 9:9-10.)  He urges this Court

17   to apply the voluntary cessation doctrine standard, which substantially raises the bar

18   that must be met to dismiss a claim as moot.  (ECF No. 16 at 5:8-13.)  Under this

19   doctrine, in order to dismiss a claim as moot based on a defendant's voluntary

20   cessation of the complained behavior, the moving party must prove that the alleged

21   wrongful behavior could not reasonably be expected to recur.  *Friends of the Earth,*

22   *Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).  Plaintiff argues

23   that some problems with the original parking space, such as the faded paint and

24   signage, continually resurface.  (ECF No. 16 at 7:6.)  Unlike "structural

25   modifications," such as replacing a step with a permanent ramp, paint and signage

26   are by their very nature susceptible to wear and tear that requires regular

27   maintenance.  (*Id*. at 6:23-7:11.)  Plaintiff therefore urges this Court to deny

28   dismissal based on mootness, as these features make it "very easy for the

1  defendants to return to their previous ways and not provide a compliant parking

2  lot." (*Id*. at 10:9-10.)

3         Plaintiff primarily relies on *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831

4  (N.D. Cal. 2011), an ADA class action case from the Northern District of

5  California, to support this argument. (*See* ECF No. 16 at pp. 7, 10.)[1]  In *Moeller*,

6  the plaintiffs brought suit for common ADA violations, including improperly

7  striped and maintained parking lots. *Moeller*, 816 F. Supp. 2d at 852-53.  The

8  defendant challenged some claims on the grounds that those features had been

9  brought into compliance, and so the claims were moot. *Id*. at 851.  The court found

10 that the defendant had not met its burden to establish that the problems were

11 unlikely to recur for several reasons. *Id*. at 860.  The court first noted that the

12 defendant had its own access policies in place prior to the suit, and that it had a

13 history of not following those policies. *Id*. at 861.  "A defendant's 'ongoing history

14 of not following its own stated . . . procedures ma[kes] necessary' an injunction."

15 *Id*.  (citing *United States v. Laedral Mfg. Corp.*, 73 F.3d 852, 857 (9th Cir. 1995)).

16 The court further noted that even if the defendant had been following its policies,

17 "the fact that [it] could change these policies . . . means that [it] has not met its

18 burden under the voluntary cessation doctrine." *Id*. at 862.  The threat of recurrence

19 in the case was particularly strong "given the length of time required for [the

20 defendant] to remove or remediate the barriers at [one location], and also given [the

21 defendant]'s history of vague and contradictory policies." *Id*.

22

23         [1]     Plaintiff also relies on an unpublished Fourth Circuit decision in which

24 the Fourth Circuit found that the defendants had not met their burden under the
   voluntary cessation doctrine. *See Feldman v. Pro Football, Inc*., 419 F. App'x 381,

25 384, 387 (4th Cir. 2011).   In that case, the plaintiff had requested ADA
   accommodations for three years prior to filing suit, but the defendants did not

26 implement accommodations until after the suit had been filed. *See id*. at 384, 387.

27 However, the Court finds *Feldman* distinguishable because, in this case, Defendants
   have established a pattern of immediately remedying a claimed ADA violation upon

28 being informed of such violation.

– 10 –                                                      14cv01147

1    The Southern District of California addressed an ADA claim with a parking

2  space issue similar to this case in *Kohler v. Islands Rests., LP*, 956 F. Supp. 2d 1170

3  (S.D. Cal. 2013) (Whelan, T.).   In *Kohler*, the defendants sought to have the

4  plaintiff's claim mooted on the grounds that they had already remedied the

5  problems with the parking space.   *Id.* at 1173.   The court noted that if the

6  defendants had remedied the slope issue in the parking space, there would "no

7  longer be a basis to support Kohler's request for relief, and his ADA claim [would

8  be] moot." *Id.* (citing *Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1130-31 (C.D.

9  Cal. 2005)).   The defendants submitted "photographs of a level with a digital slope

10 display" that showed "a slope not exceeding 2%." *Id.* at 1174.   However, the court

11 found that a genuine issue of material fact existed as to whether the slope issue had

12 been corrected because the plaintiff submitted a declaration that the slope issue was

13 still present in other sections of the lot, and so the court found that the photographs,

14 which showed only limited portions of the parking lot, were not dispositive.  *Id.*

15    Because Defendants present a factual challenge, this Court is permitted to

16 consider affidavits and other evidence beyond those referred to in the complaint,

17 and is not required to accept as true the allegations in the complaint.  *McCarthy*,

18 850 F.2d at 560.   This Court finds that dismissal of Plaintiff's ADA claim

19 appropriate under the reasoning of both *Moeller* and *Kohler*.   Plaintiff seeks an

20 injunction "compelling defendants to comply with the Americans with Disabilities

21 Act." (ECF No. 1 at 8:10-11.)  However, Defendants assert that they are presently

22 complying with the ADA, and support that assertion with undisputable evidence.

23 (*See* ECF No. 15.)

24    The Court finds sufficient evidence to conclude that the initial problems with

25 the parking space at issue in the Complaint have since been remedied. Defendants

26 submit a photograph of the new office parking space. (ECF No. 15-4, Exh. B.) In

27 that photograph, the new parking space is freshly painted, the words "No Parking"

28 are visible in the access aisle, an ISA sign has been mounted above the parking

1  space, and there is a blue border around the access aisle.  (*Id.*)  Defendants also

2  assert in their motion that the parking space meets the ADA modifications required

3  as of June 2014.  (ECF No. 15-1 at 3:19-21.)  Plaintiff does not dispute the validity

4  of these assertions and evidence in his opposition. Instead, Plaintiff raises an

5  entirely new issue with the parking space, which was not raised in the Complaint.

6  He claims that the slope in the new parking space exceeds the 2% maximum

7  allowed under the ADA.  (ECF No. 16 at 3:25-4:9.)  Although this slope issue was

8  not alleged in the Complaint, to the extent Plaintiff claims Defendants did not

9  remedy the alleged problems, but instead created an additional problem, the Court

10  will address the issue.  For the reasons discussed below, the Court finds that the

11  slope issue has also been remedied.

12       As in *Kohler*, Defendants proffer photographs and a declaration

13  demonstrating that the new parking space has already been brought into compliance

14  with respect to the slope issue.  (*See* ECF Nos. 17-1, 17-7.)  These photographs

15  show that the slope in the access aisle now measures 1.4%, which is less than the

16  maximum allowed slope of 2%.  (ECF No. 17-7, Exhs. K, I.)  Defendants have also

17  submitted a signed declaration from Larry Libsack, who oversaw all of the

18  modifications in the parking lot, and who states that the slope issue was corrected

19  on November 6, 2014, the day after being contacted by the Defendants.  (ECF No.

20  17-1 at ¶¶ 8-11.)  A similar declaration from the property manager, Robert

21  Gonzalez, states that the slope issue was corrected within days of Defendants being

22  notified of same.  (ECF No. 17-2 at ¶¶ 8, 9.)  Defendants have also submitted

23  evidence that they have spent over $7,000 to make updates and corrections to the

24  parking space.  (ECF No. 17-7, Exh. F.)

25  ///

26  ///

27  ///

28  ///

1   Unlike *Kohler*, Plaintiff here does not dispute any of these facts.[2]

2   Additionally, unlike *Moeller*, Defendants did not initially have an access policy in

3   place, and therefore did not have a history of violating that policy.  In response to

4   this suit, however, Defendants have created such a policy.  (*See* ECF No. 17-7, Exh.

5   J.) Among other things, the policy calls for an annual inspection of the parking lot

6   for painting and signage compliance, and immediate notification should any defects

7   be discovered between inspections.  (*Id.*)

8   This Court finds that the weight of the evidence supports the inference that

9   Defendants, unlike the defendants in *Moeller*, will comply with this newly created

10  policy.  Accordingly, the Court finds that the evidence submitted by Defendants

11  establishes that the parking space is compliant, that the behavior cannot reasonably

12  be expected to recur, and dismisses Plaintiff's ADA claim for lack of subject matter

13  jurisdiction.

14  ### 3.   Plaintiff's State Law Claims

15  Defendants assert in their motion that if the Court dismisses Plaintiff's

16  federal claim as moot, then it must also dismiss the pendent California state law

17  claims.  (*See* ECF No. 15 at 9:18-20.)  "[D]istrict courts may decline to exercise

18  supplemental jurisdiction over a [] claim if … the district court has dismissed all

19  claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). However,

20  district courts only have discretion "[i]f the district court dismissed all federal

21  claims on the merits."  *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d

22  802, 806 (9th Cir. 2001).  If, however, the district court "dismisses [all federal

23  _____

24  [2]   Although Defendants presented this evidence in their reply, Plaintiff
did not request leave to file a sur-reply, did not dispute these facts in his subsequent

25  motion requesting leave to amend, and did not dispute these facts in his proposed
amended complaint.  In the proposed amended complaint, Plaintiff states that the

26  slope issue and other architectural barriers were discovered in mid-October, and

27  that "[t]he defendants have claimed that this slope issue has been corrected." (ECF
No. 20-1 at ¶ 18.)  Therefore, the Court concludes that Plaintiff had opportunity to

28  dispute these facts, but did not do so.

1  claims] for lack of subject matter jurisdiction, it has no discretion and must dismiss
2  all [state law] claims." *Id*.

3      Because the Court has dismissed Plaintiff's ADA claim for lack of subject
4  matter jurisdiction, it does not have discretion to exercise supplemental jurisdiction
5  over the state law claims.

6      Accordingly, Defendants' motion to dismiss is **GRANTED.**

7      **B.    Plaintiff's Motion for Leave to File First Amended Complaint**

8      The Scheduling Order in this case set forth a pleading amendment deadline of
9  October 27, 2014.  (ECF No. 14 at ¶ 2.)  This timeline was proposed by Plaintiff
10  and adopted by the Court.  (ECF No. 21-4, Exh. N at 3:7.)  Plaintiff's motion for
11  leave to amend was not filed until November 13, 2014.  (*See* ECF No. 20.)[3]
12  Therefore, Plaintiff is required to demonstrate good cause under Rule 16 for filing
13  an amended complaint.  *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th
14  Cir. 2010).

15          1.    Rule 16 Analysis

16      Under the good cause standard of Rule 16(b)(4), the court's primary focus is
17  on the movant's diligence in seeking the amendment.  *Johnson*, 975 F.2d at 609.
18  "Good cause" exists if a party can demonstrate that the scheduling order could not
19  or "cannot reasonably be met despite the diligence of the party seeking the
20  extension." *Id.* (citation omitted).  "[C]arelessness is not compatible with a finding
21  of diligence and offers no reason for a grant of relief." *Id*.  "Although the existence
22  or degree of prejudice to the party opposing the modification might supply

23

24      [3]      The Court notes that Plaintiff failed to move to amend the Scheduling
25  Order prior to filing his motion for leave to file an amended complaint as required
   by the Ninth Circuit. *See U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*,
26  768 F.2d 1099 (9th Cir. 1985), superseded by statute on other grounds (noting that
   the district court properly denied a summary judgment motion as untimely when the
27  defendants failed to request a modification of the pretrial order after the deadline for
   filing such a motion had passed).  Despite this error, the Court will construe
28  Plaintiff's motion as including a request to amend the Scheduling Order.

additional reasons to deny a motion, the focus of the [Rule 16] inquiry is upon the moving party's reasons for seeking modification." *Id.* (citations omitted).  The party seeking to continue or extend the deadlines bears the burden of proving good cause.  *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002); *Johnson*, 975 F.2d at 608-09.

In addressing the diligence requirement, one district court in the Ninth Circuit noted:

> [T]o demonstrate diligence under Rule 16's "good cause" standard, the movant may be required to show the following: (1) that [it] was diligent in assisting the Court in creating a workable Rule 16 order..; (2) that [its] noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding [its] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference…; and (3) that [it] was diligent in seeking amendment of the Rule 16 order, once it became apparent that [it] could not comply with the order….

*Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999) (internal citations omitted).  If the district court finds a lack of diligence, "the inquiry should end." *Johnson*, 975 F.2d at 609.  If, however, the movant clears the Rule 16 bar, the Court proceeds to consider the motion under the usual standard of Rule 15.  *Campion v. Old Republic Home Prot. Co.*, Inc., 861 F. Supp. 2d 1139, 1150 (S.D. Cal. 2012).

The Court finds Plaintiff satisfies the good cause standard in this case.  The evidence suggests that Plaintiff's CASp did not submit a report until very close to or after the October 27, 2014 deadline.  The declaration from Plaintiff's CASp, Mr. Bishop, is dated November 1, 2014.  (*See* ECF No. 16-3 at 13:10.)  Defendants' property manager states that he received notice of the slope issue and Mr. Bishop's report in early November.  (ECF No. 17-2 at ¶¶ 8, 9.)  Mr. Libsack, who made corrections to the parking space also states that he received the report on November 5, 2014.  (ECF No. 17-1 at ¶ 8.)  Plaintiff then moved for leave to file his first amended complaint approximately two weeks later.  (*See* ECF No. 20.)  Plaintiff moved for leave to amend in light of the information contained in Mr. Bishop's

report, something not in his possession until very close to or after the last date to amend pleadings adopted in the Scheduling Order.[4]

Additionally, it appears Plaintiff was diligent in assisting the Court in creating a workable Scheduling Order, complied with the Scheduling Order in all other respects, and was diligent in seeking to amend the Complaint shortly after he discovered the new facts at issue.  Moreover, there is no suggestion Plaintiff knew of the allegations prior to filing the Complaint or made a tactical decision at the outset of the litigation not to include the allegations in his initial Complaint.  *Cf Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505, 508 (N.D. Cal. 2011).  Accordingly, the Court finds Plaintiff has sufficiently demonstrated "good cause" to amend the Scheduling Order.  Because the Court finds that Plaintiff satisfies the requirements of Rule 16(b), the Court proceeds to consider the requirements of Rule 15(a).

### 2.    Rule 15 Analysis

"Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'"  *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)); *see also Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994) (noting the "strong policy in favor of allowing

---

[4]    The proposed amended complaint alleges the following ADA barriers, none of which were included in the Complaint: (1) the gripping surface of the handrails on the walkway outside are 40 inches above the ramp surface, and the maximum height allowed by the ADAAG is 38 inches; (2) the handrails only extend for 10 inches beyond the top and bottom of the ramp runs, and the ADAAG requires that they extend 12 inches; (3) the transaction counters in the front and rear lobbies do not have 36 inch high wheelchair accessible surfaces; (4) the sink in the public restroom does not provide any knee clearance, and the ADAAG requires that all sinks provide knee clearance at least 27 inches high, 30 inches wide, and 19 inches deep; (5) the sink hardware is a twisty style knob, and the ADAAG requires that faucets be lever-operated, push-type, touch-type, or electronically controlled; and (6) the mirror in the public restroom is mounted 48 inches above the ground, and the maximum height permitted by the ADAAG is 40 inches. (ECF No. 20-2 at ¶¶ 19-22.)

– 16 –

amendment"). However, "a district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp.*, 465 F.3d at 951. These factors are not of equal weight as prejudice to the opposing party has long been held to be the most crucial factor in determining whether to grant leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990); *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973). The Court considers each of these factors in turn.

### i.   Prejudice to the Opposing Party

The most critical factor in determining whether to grant leave to amend is prejudice to the opposing party. *Eminence Capital*, 316 F.3d at 1052 ("Prejudice is the touchstone of the inquiry under rule 15(a).") (internal quotes and citation omitted)). The burden of showing prejudice is on the party opposing an amendment to the complaint. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1986). Prejudice must be substantial to justify denial of leave to amend. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Under Rule 15(a), "[a]bsent prejudice, or a strong showing of any of the remaining [] factors," there is a presumption in favor of granting leave to amend. *Eminence Capital*, 316 F.3d at 1052.

Defendants claim they would be prejudiced if leave to amend were granted because "[t]he Anands relied upon the Complaint, took the deposition of Mr. Turner (who did *not* identify any additional architectural barriers), remedied the parking lot at an initial cost of $6,634 paid to the paving company, had a CASp inspection performed as to the entire premises, and incurred the additional expense of filing a motion to dismiss." (ECF No. 21 at 13:1-6, alteration in original.)

Plaintiff argues that Defendants would not be prejudiced because, although the assertions by Defendant are true, Plaintiff's deposition "is still entirely valid and

complete," and so they can still rely on it.  (*See* ECF No. 22 at 2:14-15.)  Plaintiff's proposed amended complaint does not allege new visits to Defendants' site, and there are no new facts alleged regarding his prior visits.  (*Id.* at 2:15-16.)

The Court is not persuaded that Defendants will suffer substantial prejudice should Plaintiff be permitted to file an amended complaint.  Although permitting the amendment may result in the necessity of re-deposing Plaintiff, the Court does not find that this prejudice so substantial as to warrant denial of the motion. Accordingly, this factor favors amendment.

### ii.     *Undue Delay*

"Undue delay is a valid reason for denying leave to amend." *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1454 (9th Cir. 1990).  Delay, by itself, however, does not always justify denying leave to amend. *DCD Programs, Ltd.*, 833 F.2d at 186–87.  "Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson*, 902 F.2d at 1388.  Considerable delay with no reasonable explanation is relevant where a proposed amendment would cause prejudice to the other party or would significantly delay resolution of the case.   *Id*.    However, delay caused by the parties waiting until they had sufficient evidence of conduct upon which they could base claims of wrongful conduct is a reasonable explanation.  *DCD Programs, Ltd.*, 833 F.2d at 187.

Plaintiff argues that he did not engage in undue delay because the motion was "filed within three weeks of the plaintiff's expert site inspection." (ECF No. 22 at 2:2-4.)  Moreover, because this suit is in the early stages of litigation, the Court should follow the liberal policy of granting leave to amend in such circumstances. (ECF No. 20 at 5:4-5.)  Defendants, in response, assert that a determination of delay depends on "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." (ECF No. 21 at 14:3-5 (citing *AmerisourceBergen Corp.*, 465 F.3d at 953).)  While Plaintiff arguably

– 18 –

1   should have known the facts and theories raised in the proposed amended
2   complaint, the Court finds that there is no evidence that Plaintiff acted strategically
3   in waiting to hire as CASp to discover the additional violations, and that he acted
4   diligently by seeking leave to amend within three weeks of discovering these new
5   facts.  Accordingly, this factor weighs in favor of amendment.

6            *iii.*    *Bad Faith*

7          A bad faith motive is a proper ground for denying leave to amend.  *Sorosky v.*
8   *Burroughs Corp.*, 826 F.2d 794, 805 (9th Cir. 1987).  Defendants assert that "there
9   is no explanation" for Plaintiff to contend that Defendants' clinic has additional
10  barriers.  (ECF No. 21 at 13:7-9.)  They also draw the Court's attention to the Ninth
11  Circuit's decision in *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903 (9th Cir. 2011).  In
12  *Oliver*, the plaintiff intentionally withheld information about additional barriers so
13  as to prevent the defendant from removing all barriers and therefore moot the entire
14  case. *Id.* at 906, n.7.  Defendants appear to suggest some similarly sinister actions
15  by Plaintiff in this case.  Plaintiff fails to address the bad faith factor apart from the
16  claim in his reply that "[t]he defense never makes any argument that plaintiff is
17  involved in bad faith."  (ECF No. 22 at 2:6-8.)

18         Though not clearly articulated, Defendants do make such an argument.
19  However, the Court finds the argument less than compelling. The Court finds it
20  plausible that Plaintiff did not know of these additional barriers until his CASp
21  conducted an inspection and produced the report identifying those barriers.  This
22  interpretation is bolstered by the fact that Plaintiff, as noted by Defendants in their
23  response, did not complain about those barriers in his deposition, which took place
24  prior to Plaintiff's CASp inspection.  (*See* ECF No. 21 at 13:9-10.)  Contrary to
25  Defendants' assertion, seeking leave to amend the complaint does not have the
26  effect of changing Plaintiff's sworn testimony.  (*Id.* at 13:7-9.)  As previously
27  stated, the law permits an ADA plaintiff to challenge architectural barriers related to
28  his disability, even if he did not personally encounter those barriers, provided that

he personally encountered at least one barrier at the place of public accommodation. *Chapman*, 631 F.3d at 944.   Therefore, this factor weighs in favor of granting Plaintiff leave to file an amended complaint.

### iv.    Futility of Amendment

"Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1393 (9th Cir. 1997) (citation omitted).

Defendants argue that granting leave to amend would be futile for two reasons.   First, they have already remedied the parking lot issue and hired a CASp to inspect the entire property, including the path of travel as well as the interior and common areas.  (ECF No. 21 at 14:8-12.)  Second, after reviewing the CASp report and consulting with contractors, they have set forth a plan to remedy all existing barriers identified in the report.   (*Id.* at 14:13-18.)   Defendants also assert that Plaintiff has failed to establish intent to return as required under *Chapman*. *See Chapman*, 631 F.3d at 944.   "[Plaintiff] has not evidenced any intent to make another appointment with Dr. Anand. . . ."  (ECF No. 21 at 16:6-7.)  Plaintiff argues in his motion that an amendment would not be futile because he seeks only to update facts and identify additional barriers, and the relevant claims have not been adjudicated or preempted.  (ECF No. 20 at 5:27-6:3.)  In his reply, Plaintiff asserts that "[t]his is not the 'futility' that is contemplated by the courts." (*Id.* at 3:24-25.)

As previously noted, Plaintiff made statements in his deposition suggesting that his visits to Defendants' office were few and are now over.  Plaintiff testified that Dr. Anand is not his primary care physician.  (ECF No. 15-3, Exh. A at 10:11-14.)  Plaintiff also testified that he was referred to Dr. Anand for a hand injury (*id.* at 10:5) and that he has not sought any further medical assistance with regard to his

hand because he "figured three doctors were enough." (*Id.* at 13:14-16). He stated that he had seen the new parking space after Defendants' undertook to correct the problems in the Complaint (*id.* at 16:15-23) and that he "saw that it was fixed and thought that was great." (*Id.* at 19:2-3). When asked to describe the reason he was suing Defendants, Plaintiff testified that it was "[f]or not having proper handicap parking" (*id.* at 15:3-5). Defendants' attorney then asked if there were any additional reasons for the suit, to which Plaintiff replied "[t]hat's it." (*Id.* at 15:6-11.)

Plaintiff's statements in his deposition suggests amendment would be futile, as the proposed amended complaint attached to Plaintiff's motion appears deficient for several reasons. First, the proposed amended complaint fails to allege facts sufficient to establish that Plaintiff has standing to pursue injunctive relief. In order to seek an injunction against unencountered barriers, Plaintiff must establish that he has standing as to a barrier that he physically encountered. *Chapman*, 631 F.3d at 951. In the proposed amended complaint, Plaintiff alleges that he personally encountered the parking space, but does not allege a personal encounter with any of the newly alleged barriers. Now that Plaintiff no longer has standing as to the parking space, Plaintiff must establish standing as to some other barrier in order to pursue injunctive relief.

Second, although Plaintiff alleges that he "would like to be able to return and patronize the services of this Doctors Office" but "is deterred from doing so due to his previous experiences and his knowledge of the additional barriers," the statements he made in his deposition appear to contradict this allegation. (ECF No. 20-2 at ¶ 23.) A plaintiff pursuing injunctive relief must demonstrate, in addition to the traditional elements of standing, a "real and immediate threat that the plaintiff will be wronged again." *City of Los Angeles*, 461 U.S. at 111. For an ADA claim, a plaintiff can satisfy this requirement by "demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a noncompliant

1  facility." *Chapman*, 631 F.3d at 944.  Plaintiff testified that Dr. Anand is not his

2  primary care physician and that he has not sought any further treatment for his

3  hand.  (ECF No. 15-3, Exh. A at 10:11-14; 13:14-16.)  Thus, Plaintiff's testimony

4  suggests amendment would be futile.

5  Despite these potential issues, however, the Court is unable to conclude that

6  "no set of facts can be proved under the amendment to the pleadings that would

7  constitute a valid and sufficient claim or defense."  *Sweaney*, 119 F.3d at 1393.

8  Therefore, this factor weighs in favor of amendment.

9  Weighing all the factors, the Court finds that Plaintiff should be given leave

10  to file an amended complaint.  However, the Court also finds that the proposed

11  amended complaint attached to Plaintiff's motion is deficient for the reasons

12  discussed above.  While it is not clear from the record whether Plaintiff can allege

13  standing, Plaintiff is given leave to amend if he can plausibly do so.  Accordingly,

14  Plaintiff's motion for leave to amend is **GRANTED IN PART** and **DENIED IN**

15  **PART**.

16  ## C.    Plaintiff's Motion for Partial Summary Judgment

17  Plaintiff moves for partial summary judgment on the state law claims in the

18  Complaint.   As discussed above, however, the entire Complaint has now been

19  dismissed.  Therefore, Plaintiff's motion for partial summary judgment is **DENIED**

20  **AS MOOT**.

21  # IV.    CONCLUSION & ORDER

22  In light of the foregoing, the Court **GRANTS** Defendants' motion to dismiss

23  the Complaint (ECF No. 15).  The Court further **GRANTS IN PART** and **DENIES**

24  **IN PART** Plaintiff's motion for leave to file an amended complaint (ECF No. 20).

25  Plaintiff is given leave to file a First Amended Complaint, but not in the proposed

26  form attached to his motion.  If Plaintiff if able to allege facts consistent with the

27  discussion above, and he chooses to do so, Plaintiff may file a First Amended

28  Complaint no later than **August 7, 2015**.  However, Plaintiff may not assert any

causes of action not present in his proposed amended complaint.  As Plaintiff's Complaint has been dismissed in its entirety, the Court **TERMINATES AS MOOT** Plaintiff's motion for partial summary judgment (ECF No. 24).

  **IT IS SO ORDERED.**

**DATED:  July 21, 2015**

                 **Hon. Cynthia Bashant**
                 **United States District Judge**